UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE BARTER HOUSE, INC., and BRIAN DIMARCO,

                              Plaintiffs,

                    -v-

INFINITY SPIRITS LCC, *a limited liability company*, DON GOOD TEQUILA COMPANY, LLC, *a limited liability company*, EUROPEAN INFINITY GROUP INC., *a corporation*, and BRIAN HOPKINS, *an individual*,

                              Defendants.

17 Civ. 9276 (PAE) (BCM)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Trial in this case will be held later this year, once pandemic conditions so permit. Trial will be limited to the claims of breach of contract, fraud, and unjust enrichment claims brought by plaintiffs The Barter House and Brian DiMarco (together, "Barter House") against defendant Brian Hopkins. With the corporate defendants in this case having defaulted, *see* Dkt. 413, Hopkins is the sole remaining defendant in the liability phase of this case.

Barter House and Hopkins have each filed motions *in limine*. *See* Dkt. 393 (Barter House memorandum of law in support of its motions) ("BH Mem."); Dkt. 398 (Hopkins memorandum of law in support of its motions) ("Hopkins Mem."); Dkt. 419 (Barter House memorandum of law in opposition to Hopkins' motions) ("BH Opp."). In a bench ruling issued on October 27, 2020, the Court resolved five of these motions. This decision resolves the remaining four.

1.    Barter House moves to preclude Hopkins from presenting evidence regarding plaintiffs' state liquor licenses or lack thereof. In its decision on the parties' cross-motions for summary judgment, the Court ruled that plaintiffs' compliance, or lack of compliance, with state liquor licensure requirements was irrelevant to the then-pending counterclaim for breach of

contract pursued by then-defendant European Infinity Group, Inc. *See* Dkt. 280 at 44–45. That decision is law of the case, and equally applies to Barter House's breach of contract claim. And Hopkins has not articulated any theory under which Barter House's, or DiMarco's, compliance with state liquor laws would be relevant to Barter House's other pending claims, for fraud and unjust enrichment. The Court therefore grants Barter House's motion.

    2.  Barter House moves to preclude Hopkins from presenting expert testimony. The defense (like plaintiffs) did not disclose any experts during the time period the Court set in the case management plan for expert discovery. *See* Dkt. 87 (case management plan); Dkts. 141, 146-1 (noting that discovery had closed). However, after the Court conditionally vacated its initial entry of default judgments against the defendants, defense counsel identified four purported expert witnesses it proposed to call at trial. It is not clear whether Hopkins continues to seek to call any of these witnesses, insofar as defense counsel has since withdrawn, the defense's counterclaims have been dismissed, and all defendants but Hopkins have, again, defaulted. Nonetheless, in the event that Hopkins envisions calling such witness, the Court resolves Barter House's motion to preclude such testimony. The Court grants that motion, for two independent reasons.

    First, Hopkins' bid to call experts is untimely. Although otherwise participating in aspects of pretrial discovery, the defense did not disclose any experts during the time period the Court had set for such disclosures. (Nor did plaintiffs.) Neither Hopkins nor, earlier, defense counsel, has offered a reasonable explanation for the defense's failure during this period to identify the experts it now proposes.[1] Indeed, the defense did not respond to plaintiffs' motion *in*

---

[1] Later, the defense also failed to submit any materials in connection with the joint pretrial order, Dkt. 314, or to participate in the December 2, 2019 conference to discuss the joint pretrial order,

2

*limine* seeking preclusion of these experts. And permitting Hopkins to reopen discovery for this purpose—presumably resulting in the submission of expert reports and of the depositions of each expert—would invite further delay of this long-running case whose progress, as the record reflects, has been repeatedly stalled by the defense. The late addition of such experts would also prejudice plaintiffs, who have already submitted their part of the joint pretrial order, and who might be obliged to call rebuttal expert witnesses. Hopkins' late notice therefore decisively fails under the familiar standards governing the late notice of expert witnesses. *See, e.g.*, *Softel Inc. v. Dragon Medical & Scientific Comm., Inc.*, 118 F.3d 955, 962 (2d Cir. 1997) (standards for whether to permit belated expert disclosures include (1) defendants' explanation for failure to comply with discovery order, (2) the importance of new evidence, (3) the prejudice suffered by the opposing party, and (4) the possible need for a continuance); *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 117–18 (2d Cir. 2020) (where failure to disclose was likely an "oversight," plaintiff could not produce undisclosed expert testimony on plaintiff's medical records because defendants would not have opportunity to depose the expert or to secure a rebuttal expert); *Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 12–13 (2d Cir. 2017) (summary order) (upholding order precluding "highly important" expert testimony where the first, third, and fourth *Softel* factors favored preclusion); *In Re Omeprazole Patent Litig.*, 2002 WL 287785, *5 (S.D.N.Y. 2002) (precluding testimony of belatedly disclosed expert where the "first and third [*Softel*] factors weigh[ed] heavily for preclusion").

---

Dkt. 317 (conference transcript). Ordinarily, these lapses would independently justify preclusion of expert witnesses whom the defense had failed to notice. The Court, however, assumes that these lapses are attributable to the personal issues that in late 2019 afflicted then-defense counsel, the late Andy Oh, Esq., and accordingly does not rely on these failings as a basis for preclusion.

Second, the proposed expert testimony is irrelevant. Three of the defense's proposed experts were, apparently, prepared to offer testimony about DiMarco's liquor license. The Court has already granted plaintiffs' motion *in limine* to preclude that area of testimony as irrelevant. The fourth witness, Joseph Caruso, is a purported computer forensics expert whom Hopkins would, apparently, call to attest to the timing of the creation of plaintiffs' sole source letters. *See* Dkt. 207, 207-1. But the Court has already precluded such evidence, *see* Dkt. 423, as the Court recognized in recently finding moot Barter House's motion *in limine*, *see* Dkt. 435.

3. Hopkins moves to preclude deposition testimony by Hopkins to the effect that, with narrow exceptions, he, and now-defaulting defendants Don Good Tequila U.S.A., Infinity Spirits and European Infinity Group, did not hold any assets in the United States. The Court denies that motion. Such testimony is admissible as impeachment evidence, to the extent that there is evidence that Hopkins made contrary representations to plaintiff DiMarco. Further, insofar as Hopkins has asserted as a defense that DiMarco—in entering into agreements with Hopkins—should have appreciated that Hopkins was a pathological liar, the defense has squarely put DiMarco's veracity towards Hopkins at issue.

4. Hopkins next moves to preclude evidence as to his representations in the Distribution Agreement as to his ownership of certain trademarks—representations which plaintiffs claim were false. To the extent that plaintiffs had sought to offer these representations in support of an anticipatory-breach defense to the defense's counterclaims, that bid is moot, in light of the Court's dismissal of the counterclaims. However, Hopkins' allegedly false representations in the Distribution Agreement are separately admissible as impeachment evidence. The Court will admit them, subject to a limiting instruction that they are admissible solely for purposes of impeachment.

5.       Finally, Hopkins opposes plaintiffs' proposed offer of Exhibits 64, 65, 66, 69, 74, 75 and 112, on the grounds that these exhibits are, ostensibly, incomplete without certain additional pages or attachments.  The Court's present intention is to receive the exhibits as offered by plaintiffs, substantially for the reasons recited in plaintiffs' opposition to Hopkins' motion.  *See* BH Opp. at 6–10.  The Court reserves judgment as to whether there is an independent basis for admitting the additional or attached materials whose admission Hopkins seeks.  Relatedly, Hopkins makes blanket objections to other exhibits that plaintiffs seek to offer, to wit, Exhibits 9, 16, 18, 31, 32, 34, 35, 56, 61, 63, 65, 66 and 67, as, ostensibly, unfairly prejudicial.  The Court denies Hopkins' generalized bid to exclude these exhibits for failure to engage specifically as to the application of Federal Rule of Evidence 403 to each.  The Court will reserve judgment until the time of trial whether such exhibits, if offered, are admissible.

## CONCLUSION

For the foregoing reasons, the Court grants in part, and denies in part as moot, plaintiffs' outstanding motions *in limine*, and denies defendant Brian Hopkins' outstanding motions *in limine*.  The Clerk of Court is respectfully directed to terminate the motions pending at dockets 390 and 397.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: January 28, 2021
       New York, New York